UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| KEYBANK NATIONAL ASSOCIATION ) <br> 127 Public Square ) <br> Cleveland, OH 44114 ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> INTERLOGIC OUTSOURCING, INC. ) <br> 1710 Leer Drive ) <br> Elkhart, IN 46514-5446 ) <br> ) <br> NAJEEB KHAN, an individual ) <br> 23451 Lakeview Drive ) <br> Edwardsburg, MI 49112 ) <br> ) <br> BERKSHIRE BANK ) <br> 60 State Street ) <br> Boston, MA 02109 ) <br> ) <br> WELLS FARGO BANK, N.A. ) <br> 420 Montgomery Street ) <br> San Francisco, CA 94163 ) <br> ) <br> and ) <br> ) <br> JPMORGAN CHASE ) <br> 270 Park Avenue ) <br> New York, NY 10017 ) <br> ) <br> Defendants. ) | CASE NO. 1:19-cv-01566 <br><br> **VERIFIED FIRST AMENDED COMPLAINT FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, PERMANENT INJUNCTION AND DAMAGES** |

Plaintiff KeyBank National Association ("KeyBank") brings this action against Defendants Interlogic Outsourcing, Inc. ("Interlogic"), Najeeb Khan ("Khan"), Berkshire Bank

("Berkshire"), Wells Fargo Bank, N.A. ("Wells") and JPMorgan Chase ("JPMC"), and alleges as follows:

## NATURE OF THE CASE

1. This is an action for damages and preliminary and permanent injunctive relief arising out of the willful breaches and fraudulent conduct of Defendants Interlogic and Kahn in depositing with KeyBank checks drawn on an account with insufficient funds and thereafter causing KeyBank to process wire transfers from Interlogic's accounts directed to Defendants Berkshire, Wells and JPMC that did not have sufficient funds.  KeyBank has processed approximately $220 million in wire transfers as a result of Defendants Interlogic's and Kahn's wrongful conduct.  Defendants Berkshire, Wells and JPMC are the recipients of the funds Interlogic and Kahn wrongfully directed KeyBank to wire and these Defendants should hold such funds in trust for KeyBank's benefit pending orders of distribution by the court.

## PARTIES

2. KeyBank is national banking association with its principal place of business in Cleveland, Ohio.  KeyBank is a national bank.

3. Interlogic is an Indiana corporation with its principal place of business in Elkhart, Indiana.  Interlogic has an agent for service of process in Ohio, is licensed to transact business in Ohio, and carries on or does business in Ohio.  Interlogic provides payroll processing services, including payroll checks and related reports, payroll tax filing, electronic timekeeping, managing human resources information, and online payroll reporting.

4.Khan is an individual who, upon information and belief, resides in Michigan. Khan is, upon information and belief, the principal owner, president and CEO of Interlogic and has directed the wrongful conduct of Interlogic described herein.

5.Berkshire is a bank with its principal place of business in Massachusetts. Berkshire transacts business in multiple states in the Eastern United States.  Upon information and belief, Berkshire is a wholly owned subsidiary of Berkshire Hills Bankcorp, a publicly traded bank holding company with its principal place of business in Boston, Massachusetts.

6.Wells is a national banking association with its principal place of business in San Francisco, California.

7.JPMC is a national banking association with its principal place of business in New York, New York.

## JURISDICTION AND VENUE

8.This Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because the sole Plaintiff, KeyBank, is an Ohio corporation with its principal place of business in Ohio, and all Defendants are citizens of states other than Ohio, and the matter in controversy exceeds $75,000.

9.Venue is proper in this Court pursuant to 28 U.S.C § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district and Interlogic and Khan are subject to personal jurisdiction in this Court.

10.This Court has personal jurisdiction over Interlogic and Khan pursuant to R.C. 2307.382(A) because Interlogic transacts business in Ohio and its conduct relevant to this action was directed by Khan.  Interlogic carries on continuous and systematic business in Ohio, and

Interlogic has purposefully availed itself of the privilege of doing business in Ohio and invoked the benefits and protections of Ohio law. Interlogic and Khan have sufficient contact with Ohio to justify exercising personal jurisdiction over them.

11. This Court has personal jurisdiction over Wells and JPMC pursuant to R.C. 2307.382(A) because both Wells and JPMC transact continuous and systematic business in Ohio, and have purposefully availed themselves of the privilege of doing business in Ohio and invoked the benefits and protections of Ohio law. Wells and JPMC have sufficient contact with Ohio to justify exercising personal jurisdiction over them.

12. This Court has personal jurisdiction over Berkshire pursuant to R.C. 2307.382(A) because Berkshire has knowingly and repeatedly received funds from wire transfers initiated in Ohio and, with the specific transactions at issue in this matter, have sufficient contact with Ohio to justify exercising personal jurisdiction over it.

## GENERAL ALLEGATIONS

13. On or about February 8, 2008, KeyBank and Interlogic entered into a Cash Management Services Master Agreement (the "Master Agreement") relating to Interlogic's purchase of cash management services from KeyBank. (A copy of the Master Agreement is attached hereto as Exhibit A.) Pursuant to the Master Agreement, KeyBank and Interlogic have entered into multiple subsidiary agreements, generally known as Services Schedules and Agreements, all of which are incorporated within the Master Agreement (the Master Agreement and incorporated subsidiary agreements are hereby referred to herein as the "Agreement").

14. Pursuant to the Agreement, KeyBank provided various financial and cash management services to Interlogic, including maintaining various company accounts and processing deposits into and transfers out of those accounts for purposes of Interlogic's business.

15. The principal owner, president and CEO of Interlogic is Najeeb Khan. Upon information and belief, Khan also owns or controls TimePlus Systems, LLC ("TimePlus") and IOI Payroll Services ("IOI Payroll"). TimePlus and IOI Payroll operate out of the same location as Interlogic in Elkhart, Indiana.

16. Upon information and belief, on or about July 3 and 5, 2019, Khan caused TimePlus and IOI Payroll to issue a series of checks payable to Interlogic drawn from their bank accounts with Lake City Bank in Warsaw, Indiana. Those checks totaled approximately $250 million.

17. Upon information and belief, Khan then caused Interlogic on or about July 3 and 5, 2019, to deposit the checks from TimePlus and IOI Payroll into Interlogic's accounts with KeyBank. Interlogic deposited approximately $123 million into its KeyBank account on July 3, 2019, which deposits were settled on July 5, 2019. Interlogic deposited an additional $127 million into its KeyBank account on July 5, 2019, which deposits were settled on July 8, 2019.

18. The depositing of checks into Interlogic's accounts at KeyBank by Kahn and Interlogic in the amounts deposited on July 3 and July 5 was not an uncommon occurrence and such deposits were consistent with earlier deposits made by Interlogic in 2019.

19. KeyBank understood that Kahn and Interlogic were making such deposits in furtherance of their payroll services to Interlogic's customers and regularly deposited large sums

of money and thereafter in close succession to such deposits initiated wire transfers to Berkshire, Wells, JPMC and other banks that collectively totaled the amounts recently deposited.

20. On or about July 5, 2019, Khan and Interlogic directed KeyBank to issue numerous separate wire transfers to various entities through Defendants Berkshire, Wells and JPMC. Each wire transfer ranged between $1 million - $3 million. The total amount of the wire transfers was approximately $90 million.

21. On or about July 8, 2019, Khan and Interlogic directed KeyBank to issue 41 separate wire transfers to various entities through Berkshire, Wells and JPMC. Each wire transfer ranged between $1 million - $3 million. The total amount of the wire transfers was approximately $122.5 million. (A listing of the wire transfers, with account numbers redacted, is attached hereto as Exhibit B.) Berkshire was the recipient of 28 wire transfers totaling approximately $90 million. Wells was the recipient of 5 wire transfers totaling approximately $10 million. JPMC was the recipient of 8 wire transfers totaling approximately $22 million.

22. Based on the settlement dates of the various checks deposited by Interlogic into its KeyBank account, there were sufficient funds in its KeyBank account to process all of the wire transfers initiated on July 5 and July 8, 2019.

23. Unbeknownst to KeyBank, at the time that Khan caused TimePlus and IOI Payroll to issue the checks to Interlogic, there were insufficient funds in TimePlus's and IOI Payroll's accounts with Lake City Bank. Upon information and belief, Khan (and thereby TimePlus, IOI Payroll and Interlogic) knew that there were insufficient funds in the Lake City Bank account.

24. On or about July 8, 2019, KeyBank received notices from Lake City Bank that the checks issued by TimePlus and IOI Payroll were being returned for insufficient funds. Pursuant to bank operating rules, banks are allowed to dishonor cleared checks up to two business days after settlement. Based on Lake City Bank's actions to dishonor the checks, funds were not transferred from Lake City Bank sufficient to cover the approximate $212.5 million in wire transfers issued by KeyBank based on Khan's and Interlogic's instructions.

25. On or about July 9 and July 10, 2019, KeyBank attempted to or did contact each of Berkshire, Wells and JPMC to notify them of Khan's and Interlogic's conduct and requested that they set aside the funds wired to them by KeyBank on July 5 and July 8, 2019 pending resolution of KeyBank's claims against Khan and Interlogic to unwind the wire transfers. Each of Berkshire, Wells and JPMC declined to voluntarily set aside the funds in the absence of an agreement by KeyBank to indemnify each of them in the event that any third party made a claim against the funds.

26. On information and belief, KeyBank believes that Berkshire and Wells continue to hold some of the funds it wired to them on July 5 and July 9, 2019, but is uncertain whether any portion of such funds have been transferred to other banks or redirected to other accounts than those into which the funds were originally wired. KeyBank also believes that JPMC continues to hold some of the funds it wired to them on July 5 and July 9, 2019, but is uncertain whether any portion of such funds have been transferred to other banks or redirected to other accounts than those into which the funds were originally wired.

27. As a result of the actions of Khan and Interlogic, KeyBank was induced to transfer approximately $220 million in funds to Berkshire, Wells and JPMC that were not

available in Interlogic's account. At present, Key is aware that the shortfall is approximately $122 million and is concerned that its exposure could amount to the full $220 million in wire transfers previously completed. Accordingly, KeyBank has lost, and if not returned by Berkshire, Wells and JPMC, is in immediate jeopardy of losing, approximately $122 million as a result of the wrongful conduct of Khan and Interlogic.

## FIRST CLAIM FOR RELIEF
### Breach of Contract

28. KeyBank hereby incorporates all its prior allegations.

29. The Master Agreement and subsidiary agreements are, collectively, a valid and enforceable contract, supported by adequate consideration.

30. At all times, KeyBank has performed all obligations required of it under the terms of the Master Agreement.

31. The Master Agreement provides, among other things, that "[i]n the event any actions by Client should result in an overdraft in any of its accounts, Client is responsible for repaying the overdraft immediately, without notice or demand, together with interest thereon at a rate determined in accordance with Bank's fee schedule in effect from time to time."

32. By directing KeyBank to wire the approximately $122 million to Berkshire, Wells and JPMC, with knowledge that the checks that were recently deposited would not clear, Kahn and Interlogic caused an overdraft of more than $122 million.

33. Despite notice and demand to Khan and Interlogic, Interlogic has failed to repay the overdraft in Interlogic's account and has thereby breached the Agreement.

34. KeyBank fully performed all of the terms and conditions of the Agreement.

35. Interlogic's actions constitute a material breach of the Agreement, and it continues to materially breach the Agreement by failing to repay the overdraft.

36. KeyBank has been damaged by Interlogic's breaches of the Agreement.

37. The conduct described above constitutes separate and distinct breaches of the Agreement.

38. Upon information and belief Interlogic is insolvent.

39. As a result of Interlogic's breach of the Agreement, KeyBank has suffered, and will continue to suffer, damages and irreparable harm for which it has no adequate remedy at law. KeyBank also is entitled to specific performance of the Agreement.

## SECOND CLAIM FOR RELIEF
### Fraud

40. KeyBank hereby incorporates all its prior allegations.

41. Khan and Interlogic represented to KeyBank that the checks issued to Interlogic by TimePlus and IOI Payroll were valid and that sufficient funds existed in their accounts with Lake City Bank to cover those checks.

42. Based on the eleven year history of assisting Khan and Interlogic with their banking needs, KeyBank had a reasonable basis to believe that Khan and Interlogic were presenting checks drawn on accounts with sufficient funds.

43. Upon information and belief, Khan and Interlogic knew at the time of that the deposits into Interlogic's accounts occurred that TimePlus and IOI Payroll did not have sufficient funds to cover the amount of the checks.

44. Khan and Interlogic intended that KeyBank rely on its representation that sufficient funds existed in TimePlus's and IOI Payroll's accounts to cover the checks when Khan

9

instructed that wire transfers be made out of Interlogic's accounts. KeyBank had no reason to believe that the checks were invalid, and it was justified in its reliance on Khan and Interlogic's representations under the circumstances.

45. KeyBank was, and continues to be, injured by its reliance Khan and Interlogic's fraudulent misrepresentations and has suffered, and continues to suffer, damages and irreparable harm as a result.

## PRAYER FOR RELIEF

WHEREFORE, KeyBank hereby requests that this Court enter a judgment in its favor and order:

    A.    that a temporary restraining order and preliminary injunction be entered requiring that Berkshire, Wells and JPMC, as the recipients of the funds transferred out of Interlogic's account at KeyBank, be ordered to maintain and preserve those funds, and not disburse or otherwise dispose of them pending further Order of the Court, and that such recipients use their best efforts to recover any such funds that have been disbursed or disposed of prior to receipt of notice of the Court's order;

    B.    that a temporary restraining order and preliminary injunction be entered requiring that Khan and Interlogic maintain and preserve all assets and not transfer any assets without prior approval of this Court;

    C.    that judgment be entered for KeyBank against Khan and Interlogic for specific performance and all compensatory, statutory and related damages;

    D.    that judgment be entered for KeyBank against Khan and Interlogic for punitive damages;

  E. that KeyBank be awarded all of the costs and attorneys' fees it has incurred in connection with this action; and

  F. such other and further relief as this Court deems just and proper.

July 10, 2019

            Respectfully submitted,

            */s/ Steve Kaufman*
            Steve Kaufman (0016662)
            Steve.Kaufman@Kaufman-Company.com
            Kathy Poldneff (0088529)
            Kathy.Poldneff@Kaufman-Company.com
            Sara Smoter (0095682)
            Sara.Smoter@Kaufman-Company.com
            **KAUFMAN & COMPANY LLC**
            1001 Lakeside Ave., Suite 1710
            Cleveland, OH 44114
            Phone: 216-912-5500
            Fax: 216-912-5501

            */s/Robert F. Ware*
            Frank R. DeSantis (0030954)
            Frank.DeSantis@ThompsonHine.com
            Robert F. Ware (0055515)
            Rob.Ware@ThompsonHine.com
            Curtis L. Tuggle (0078263)
            Curtis.Tuggle@ThompsonHine.com
            Mark R. Butscha, Jr. (0088854)
            Mark.Butscha@ThompsonHine.com
            **THOMPSON HINE LLP**
            3900 Key Center
            127 Public Square
            Cleveland, OH 44114
            Phone: 216-566-5500
            Fax: 216-566-5800

            *Attorneys for Plaintiff KeyBank National Association*

## **VERIFICATION**

Pursuant to 28 U.S.C. § 1746, I verify under penalty of perjury that the foregoing is true and correct.

Executed on July 10, 2019.  /s/ *Denise R. Sullivan*
Denise R. Sullivan

## CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.  Copies of the foregoing were also served via regular mail upon the following:

INTERLOGIC OUTSOURCING, INC.
1710 Leer Drive
Elkhart, IN 46514-5446

NAJEEB KHAN
23451 Lakeview Drive
Edwardsburg, MI 49112

BERKSHIRE BANK
c/o registered agent
CT Corporation System
155 Federal Street Ste. 700
Boston, MA 02110

WELLS FARGO BANK, N.A.
c/o registered agent
Corporation Service Co.
50 W. Broad St., Ste. 1330
Columbus, OH  43215

JPMORGAN CHASE
c/o registered agent
CT Corporation System
4400 Easton Commons Way, Ste. 125
Columbus, OH  43219

/s/ Steven S. Kaufman

*One of the Attorneys for Plaintiff KeyBank National Association*