UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| KEYBANK NATIONAL ASSOCIATION )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>)<br>INTERLOGIC OUTSOURCING, INC., et )<br>al., )<br>)<br>Defendants. )<br>) | CASE NO. 1:19-cv-01566<br><br>JUDGE:<br><br><br><br><br>**MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

Pursuant to Fed. R. Civ. P. 65, Plaintiff KeyBank National Association ("KeyBank") moves this Court for a temporary restraining order requiring that defendants Berkshire Bank, Wells Fargo Bank, N.A., and JPMorgan Chase, the recipients of funds transferred from defendant Interlogic Outsourcing, Inc.'s ("Interlogic's") account with KeyBank (as more specifically set forth in Exhibit B to the Verified First Amended Complaint), and their respective officers, agents, servants, employees, and attorneys, and all other persons who are in active concert or participation with them, maintain and preserve those funds, and not disburse or otherwise dispose of them pending further Order of the Court, and that such recipients use their best efforts to recover any such funds that have been disbursed or disposed of prior to receipt of notice of the Court's Order.

Pursuant to Rule 65(b), KeyBank also moves this Court for a preliminary injunction containing the same terms as requested above for the temporary restraining order.

A Memorandum in support of this Motion is attached.

Respectfully submitted,

*/s/* Steven S. Kaufman
Steven S. Kaufman (0016662)
steve.kaufman@kaufman-company.com
Katherine M. Poldneff (0088529)
kathy.poldneff@kaufman-company.com
Sara Smoter (0095682)
Sara.Smoter@Kaufman-Company.com
**KAUFMAN & COMPANY LLC**
1001 Lakeside Avenue, Suite 1710
Cleveland, OH 44114
Phone: 216-912-5500
Fax: 216-912-5501

Robert F. Ware (0055515)
Rob.Ware@ThompsonHine.com
Curtis L. Tuggle (0078263)
Curtis.Tuggle@ThompsonHine.com
Mark R. Butscha, Jr. (0088854)
Mark.Butscha@ThompsonHine.com
**THOMPSON HINE LLP**
3900 Key Center
127 Public Square
Cleveland, OH 44114
Phone: 216-566-5500
Fax: 216-566-5800

*Attorneys for Plaintiff KeyBank National Association*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| KEYBANK NATIONAL ASSOCIATION<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>INTERLOGIC OUTSOURCING, INC., et al.,<br><br>　　　　Defendants. | CASE NO. 1:19-cv-01566<br><br><br><br><br>**MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

**I.     INTRODUCTION**

Plaintiff KeyBank National Association ("KeyBank") is at immediate risk of losing approximately $122 million dollars as a result of wire transfers processed from the account of defendant Interlogic Outsourcing, Inc. ("Interlogic") without sufficient funds to cover them. KeyBank requests an immediate temporary restraining order to freeze those funds, which were received by defendants Berkshire Bank, Wells Fargo Bank, N.A., and JPMorgan Chase (collectively, the "Defendant Banks")–so that they may be recovered and returned to KeyBank due to the apparent fraud perpetrated by defendant Interlogic and its principal owner, president and CEO, defendant Najeeb Khan ("Khan").

Defendants Interlogic and Khan caused a series of checks from companies related to Interlogic to be deposited in Interlogic's accounts during the week of July 1, 2019 totaling over $122 million dollars. Shortly thereafter, the defendants caused KeyBank to process wire transfers with those presumed funds as the source. KeyBank then received notice that the checks

deposited into Interlogic's account had not been honored due to insufficient funds. If the requested order is not entered, KeyBank stands to lose approximately $122 million.

II.   **FACTS**

Interlogic provides payroll processing services for third parties. (Ver. Am. Cmplt. ¶3.) In February 2008, Interlogic entered into a Cash Management Services Master Agreement (the "Master Agreement") with KeyBank. (*Id.* at ¶13, Exhibit A to Ver. Am. Cmplt.) Under the Master Agreement, KeyBank provided various cash management services to Interlogic, such as maintaining various accounts and processing transfers into and out of accounts to facilitate Interlogic's payroll processing business. (*Id.* at ¶¶13-14.) Pursuant to the Master Agreement, KeyBank and Interlogic also entered into multiple subsidiary agreements, all of which are incorporated within the Master Agreement. (*Id.* at ¶13.)

Interlogic's president, CEO, and principal owner, Najeeb Khan, also owns and controls TimePlus Systems, LLC ("TimePlus") and IOI Payroll Services ("IOI Payroll"), which operate out of the same location as Interlogic in Elkhart, Indiana. (*Id.* at ¶15.) On or about July 3 and 5, 2019, Khan caused TimePlus and IOI Payroll to issue checks totaling about $122 million to Interlogic drawn from their bank accounts with Lake City Bank in Warsaw, Indiana. (*Id.* at ¶16.) Khan then caused Interlogic to deposit the checks into Interlogic's accounts at KeyBank. (*Id.* at ¶17.) Khan then directed KeyBank to issue 41 separate wire transfers totaling about $122 million to various entities through three different banks: defendants Berkshire, Wells Fargo, and JPMorgan Chase. (*Id.* at ¶21.) A spreadsheet showing the recipients of the funds has been attached as Exhibit B to the Verified First Amended Complaint. Berkshire was the recipient of 28 wire transfers totaling approximately $90 million. Wells was the recipient of 5 wire transfers totaling approximately $10 million. JPMC was the recipient of 8 wire transfers totaling approximately $22 million. (*Id.*)

The depositing of checks into Interlogic's accounts at KeyBank by Kahn and Interlogic in the amounts deposited on July 3 and July 5 was not an uncommon occurrence, as KeyBank understood that Kahn and Interlogic were making such deposits in furtherance of their payroll services to Interlogic's customers and regularly deposited large sums of money and initiated wire transfers to Berkshire, Wells, JPMC, and other banks in close succession to such deposits. (*Id.* at ¶18-19.) Accordingly, prior to July 8, 2019, KeyBank had no reason to believe that Interlogic did not have funds sufficient to cover the wire transfers directed by Khan.

When Khan caused TimePlus and IOI Payroll to issue checks to Interlogic, their accounts with Lake City Bank did not have sufficient funds to cover the checks. (*Id.* at ¶23.) KeyBank has reason to believe that Khan knew TimePlus's and IOI Payroll's accounts lacked sufficient funds but caused the checks to be issued nevertheless. (*Id.*) On or about July 8, 2019, KeyBank received notices from Lake City Bank that the checks issued by TimePlus and IOI Payroll were being returned; thus, funds were not transferred from Lake City Bank sufficient to cover the $122 million in wire transfers issued by KeyBank at Khan's direction. (*Id.* at ¶24.) Without approximately $122 million to cover the wire transfers made from Interlogic's account at Khan's direction, KeyBank is in immediate jeopardy of losing approximately $122 million. (*Id.*)

On or about July 9 and July 10, 2019, KeyBank attempted to or did contact each of Berkshire, Wells and JPMC to notify them of Khan's and Interlogic's conduct and requested that they set aside the funds wired to them by KeyBank on July 9, 2019 pending resolution of KeyBank's claims against Khan and Interlogic to unwind the wire transfers. (*Id.* at ¶25.) Each of Berkshire, Wells and JPMC declined to voluntarily set aside the funds in the absence of an agreement by KeyBank to indemnify each of them in the event that any third party made a claim against the funds. (*Id*.)

On or about July 9, 2019, KeyBank was advised by Interlogic's counsel that Interlogic was insolvent and unable to correct the overdraft situation created by approximately $122 million in wire transfers directed by Khan.  (Declaration of Robert J. Burns, filed herewith, at ¶¶4-6.)  Upon information and belief, Interlogic is either insolvent or otherwise unable to cover the approximately $122 million in wire transfers made by KeyBank at Khan's direction.  (Id.; *see also* Verif. Am. Compl. ¶38.)

### III.  LAW AND ARGUMENT

#### A.  KEYBANK IS ENTITLED TO INJUNCTIVE RELIEF.

Courts have the power to order injunctive relief, to either enjoin a party from taking an act or to require a party to do or continue doing an act to prevent irreparable harm.  *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) (the purpose of injunctive relief is to preserve the position of the parties until trial); *see also United States v. White County Bride Com.*, 275 F.2d 529, 536 (7th Cir. 1960) (holding that the function of injunctive relief is "preventive, prohibitory, protective, or restorative, as law and circumstances of a case warrant") (quoting Moore's Federal Practice, § 65.04(1)); *Frisch's Rest., Inc. v. Shoney's Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985) (noting that a district court has broad discretion to grant injunctive relief). A party is entitled to injunctive relief when, on balance, a court finds the following factors weigh in favor of relief:

(1)  The likelihood or probability of the movant's success on the merits;

(2)  Whether the movant will suffer irreparable harm if the requested relief is denied;

(3)  What injury to others will be caused by the granting of the injunction; and

(4)  Whether the public interest will be served by the granting of an injunction.

*Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007); *Frisch's Rest.*, 759 F.2d at 1263. These are "factors to be balanced, not prerequisites that

must be met." *Certified Restoration Dry Cleaning Network,* 511 F.3d at 542; *see also Frisch's Rest.*, 759 F.2d at 1263. This test is flexible, and the four factors should not be considered prerequisites to the issuance of an injunction, but must be balanced. *Golden v. Kelsey-Hayes Co. (In re Golden)*, 73 F.3d 648, 653 (6th Cir. 1996); *Stampede Presentation Prods., Inc. v. Westminster Technologies, Inc.,* No. 1:13 CV 1713, 2013 U.S. Dist. LEXIS 143358, at *8 (N.D. Ohio Oct. 3, 2013).

Based on a balancing of the factors here and the threat of immediate irreparable harm to KeyBank, a temporary restraining order is warranted.

    **1.**    <u>**KeyBank is likely to succeed on the merits**</u>.

To demonstrate a substantial likelihood of success on the merits, the movant need only show a probability that a reasonable jury would find in its favor after a trial on the merits. *See Certified Restoration Dry Cleaning Network,* 511 F.3d at 542 ("a party is not required to prove his case in full [and] a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits."). Here, Interlogic breached the Agreement by failing to repay the overdraft that occurred as the result of the $122 million in wire transfers. Moreover, KeyBank has alleged that Khan and Interlogic represented, with knowledge of the falsity of the representation, that sufficient funds existed to cover the wire transfers made by KeyBank. KeyBank justifiably relied upon Khan's and Interlogic's misrepresentations to make the wire transfers. Thus, KeyBank is likely to succeed on the merits of its claims.

    **2.**    <u>**KeyBank will be irreparably harmed if the relief sought is not granted**</u>.

An injury is "irreparable if it is not fully compensable by monetary damages." *Certified Restoration Dry Cleaning Network,* 511 F.3d at 550 (quoting *Overstreet v. Lexington-Fayette*

*Urban County Gov't*, 305 F.3d 566, 578 (6th Cir. 2002)). Irreparability includes situations where "the nature of the plaintiff's loss would make the damages difficult to calculate." *Id.* (quoting *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992)).

Courts routinely find that the inability to collect a money judgment can support a finding of irreparable harm. In *Jieyi Elecs. Co., Ltd. v. Case Industries, Inc.,* No. 5:14-CV-01996, 2015 WL 2238899, at *1 (N.D. Ohio May 12, 2015), plaintiff alleged that defendant sold plaintiff's products to customers but never paid its debts for the products to plaintiff. Plaintiff sought over $1.3 million in overdue invoices from defendant. *Id*. Plaintiff presented evidence that defendant was winding down its business which included paying excessive employee salaries, increased travel expenses, and paying off personal credit lines. *Id*. at *3. The court found "if the Court does not intervene and enjoin further expenditures of the corporate assets, the Defendants will likely dissipate the remaining funds to their own benefit, leaving little to nothing to pay an undisputed debt." *Id*. The court concluded that injunctive relief was warranted because the risk that defendant may not be a going concern in the future "emphasizes the irreparable harm that will result if the assets are not enjoined now, since there will be nothing left to collect if [defendant] completes the process of winding down the company. *Id*; *see also OAO Corp. v. U.S.,* 49 Fed. Cl. 478, 480 (Fed. Cl. 2001) **("[I]n extraordinary circumstances, such as the prospect of insolvency or an inability to collect damages, will monetary damages alone give rise to irreparable harm**." (emphasis added)); *Micro Signal Research, Inc. v. Otus*, 417 F.3d 28, 31 (1st Cir. 2005) (finding that strong showing that defendant may not have assets on the day of judgment can support a showing of irreparable injury); *Deckert v. Independence Shares Corporation,* 311 U.S. 282, 290–291, 61 S.Ct. 229, 85 L.Ed. 189 (1940) (finding that where defendant "was insolvent and its assets in danger of dissipation or depletion," the possibility of legal remedy was inadequate and a temporary injunction restraining the transfer of funds was

properly issued); *Plainfield Specialty Holdings II Inc. v. Children's Legal Services PLLC*, 634 F.Supp.2d 833, 846 (E.D.Mich.2009) (finding that plaintiff, a lender with a perfected security interest in all of the defendant's assets "demonstrated that it is likely to not have recourse to other funds should these be depleted"); *Tocco v. Tocco,* 409 F.Supp.2d 816, 831–832 (E.D.Mich.2005) (enjoining the defendant from transferring assets in which the plaintiff had a security interest, explaining, "due to the extraordinary facts of this case ... there is a strong possibility that corrective relief will not be available to Plaintiffs in the ordinary course of litigation absent an injunction."); *Roland Machine Co. v. Dresser Indus.*, 749 F.2d 380, 385 (7th Cir.1984) (recognizing that a plaintiff could meet the irreparable harm element where a defendant is in danger of becoming insolvent).

Here, if the funds are disbursed or otherwise disposed of by the Defendant Banks, KeyBank may never be able to recover them. KeyBank has reason to believe that Interlogic and Khan do not have sufficient funds to pay a $122 million judgment in this case, especially given the representations made by Interlogic's counsel that it is insolvent. Thus, if the funds at issue are disbursed, there is a significant likelihood that KeyBank will not be able to recover them. Given the real possibility that the funds will not be recoverable by KeyBank, KeyBank is likely to suffer irreparable harm in the absence of the Court entering immediate injunctive relief.

### 3. The entry of an injunction will not harm third parties.

No third parties will be harmed if the injunction is granted. Although the Defendant Banks received and presumably hold the funds transferred by KeyBank, the requested injunction would not deprive those third parties of the right to the funds. It would merely require those funds to be held to maintain the status quo and prevent immediate irreparable harm to KeyBank. If a source of funds is identified that is sufficient to cover Interlogic's obligations, the funds can

then be released and transferred per Interlogic's request. However, until such time, no party will suffer harm as a result of the requested order.

Additionally, no customers of either Interlogic or the Defendant Banks will be harmed by the requested relief. KeyBank's request does not serve to deprive any customers or third parties of available funds. Rather, Interlogic did not have the money that it requested to be transferred in the first instance, and defendants cannot look to KeyBank to cover their shortfalls and act as their de facto insurer.

    **4.**    **The issuance of an injunction will serve the public interest.**

"Generally, upholding reasonable contracts is in the public interest." *Dayton Superior Corp. v. Yan*, 2012 U.S. Dist. LEXIS 162041, at *23-24 (S.D. Ohio Nov. 13, 2012) (citing *Prosonic Corp. v. Stafford*, 539 F. Supp. 2d 999, 1008 (S.D. Ohio 2008)). "The public has a strong interest in the preservation of agreements and in preserving the orderly conduct of businesses." *Michael's Finer Meats, LLC v. Alfery*, 649 F. Supp. 2d 748, 757 (S.D. Ohio 2009). This Court should reaffirm those principles by issuing an injunction.

Accordingly, all of the factors for injunctive relief weigh in favor of KeyBank in this case. By issuing a temporary restraining order, the Court will prevent the high likelihood of irreparable harm to KeyBank without causing harm to any third parties.

    **B.**    **NO BOND IS NECESSARY.**

The Sixth Circuit has long held that the district court has discretion over whether to require the posting of a security in connection with Rule 65(c). *Moltan Co. v. Eagle-Picher Indus. Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995). Where a temporary restraining order will cause no discernible monetary damage to the defendant, the plaintiff need not post bond. *Zahuranec v. Int'l Union UAW*, No. 1:05CV1588, 2005 U.S. Dist. LEXIS 11567, at *8 (N.D. Ohio June 10, 2005). Here, no damages will befall Interlogic or Khan if the injunctive relief is ordered.

Rather, the requested injunction will simply maintain the status quo. Thus, the Court should exercise it discretion and not require KeyBank to post a bond.

**IV.    CONCLUSION**

For the reasons set forth herein, KeyBank's Motion for Temporary Restraining Order and Preliminary Injunction should be granted.

Respectfully submitted,

*/s/* Steven S. Kaufman
Steven S. Kaufman (0016662)
steve.kaufman@kaufman-company.com
Katherine M. Poldneff (0088529)
kathy.poldneff@kaufman-company.com
Sara Smoter (0095682)
Sara.Smoter@Kaufman-Company.com
**KAUFMAN & COMPANY LLC**
1001 Lakeside Avenue, Suite 1710
Cleveland, OH  44114
Phone:  216-912-5500
Fax:  216-912-5501

Robert F. Ware (0055515)
Rob.Ware@ThompsonHine.com
Curtis L. Tuggle (0078263)
Curtis.Tuggle@ThompsonHine.com
Mark R. Butscha, Jr. (0088854)
Mark.Butscha@ThompsonHine.com
**THOMPSON HINE LLP**
3900 Key Center
127 Public Square
Cleveland, OH 44114
Phone: 216-566-5500
Fax: 216-566-5800

*Attorneys for Plaintiff KeyBank National Association*

## CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.  Copies of the foregoing were also served via regular mail upon the following:

INTERLOGIC OUTSOURCING, INC.
1710 Leer Drive
Elkhart, IN 46514-5446

NAJEEB KHAN
23451 Lakeview Drive
Edwardsburg, MI 49112

BERKSHIRE BANK
c/o registered agent
CT Corporation System
155 Federal Street Ste. 700
Boston, MA 02110

WELLS FARGO BANK, N.A.
c/o registered agent
Corporation Service Co.
50 W. Broad St., Ste. 1330
Columbus, OH  43215

JPMORGAN CHASE
c/o registered agent
CT Corporation System
4400 Easton Commons Way, Ste. 125
Columbus, OH  43219

/s/ Steven S. Kaufman

*One of the Attorneys for Plaintiff KeyBank National Association*